[Cite as *Williams v. Columbus*, 2023-Ohio-1451.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Justin Williams, | : | |
| Plaintiff-Appellant, | : | No. 22AP-489 |
| | | (C.P.C. No. 20CV-5212) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 2, 2023

**On brief:** *Walton and Brown, LLP*, and *Chanda L. Brown*, for appellant.

**On brief:** *Zach Klein*, City Attorney, and *Alana V. Tanoury*, for appellee City of Columbus. **Argued:** *Alana V. Tanoury*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiff-appellant, Justin Williams, appeals from a decision of the Franklin County Court of Common Pleas granting summary judgement to defendant-appellee, City of Columbus, in an action alleging negligent maintenance and upkeep of city roads and sewers. For the reasons below, we affirm.

## I. Facts and Procedural History

{¶ 2} On the afternoon of August 14, 2018, Williams was riding his bicycle on Shady Lane Road and as he reached the intersection of Shady Lane Road and Ellery Drive, the pavement around the catch basin at the northeast corner of the intersection collapsed, and Williams was thrown from his bicycle to the pavement and sustained injuries. Williams did not see any problems with the road during his bicycle ride. City medical personnel responded to treat Williams, and notified the city's Sewer Maintenance Operation Center ("SMOC") that the area was caving in.

{¶ 3} SMOC immediately dispatched a crew to the area who determined the catch basin had caved in and secured the area with a steel plate. The catch basin was repaired by August 20, 2018.

{¶ 4} At the time of the incident, the city was engaged in a major street resurfacing campaign in the general area, but there was no work activity near the site of the incident. The city had received many reports of potholes and general disrepair of area streets, but no specific reports of problems at the intersection of Shady Land Road and Ellery Drive. The catch basin was inspected in 2017 and it was deemed to be in good shape.

{¶ 5} Williams filed a lawsuit against the city alleging negligent maintenance and upkeep of the road and sewer system. The city moved for summary judgment on the basis of governmental immunity and the trial court granted the motion. Williams now brings the instant appeal.

## II. Assignment of Error

{¶ 6} Appellant assigns the following sole assignment or error for our review:

> The trial court erred when it granted the motion for summary judgment filed by the City of Columbus.

## III. Standard of Review

{¶ 7} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 8} A movant must show that no genuine issue of material fact exists and must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the non-movant has no evidence to support his claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the non-movant is unable to set forth specific facts to show a genuine issue of material fact, summary judgment is proper. *Id.*

{¶ 9} We apply a de novo standard of review when reviewing a trial court's summary judgment ruling. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). The review only involves questions of law, and we undertake an independent examination of

the record. *Id.* Whether a political subdivision is entitled to statutory immunity is a question of law. *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).

## IV. Legal Analysis

{¶ 10} R.C. Chapter 2744 outlines the statutory scheme for tort liability for political subdivisions, including cities, and its employees. R.C. 2744.02(A)(1) generally grants immunity from civil liability and provides "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 11} The statute specifies five exceptions to the general grant of immunity, and two of these enumerated exceptions are relevant to this case. Williams contends that the city is liable under R.C. 2744.02(B)(2), which states: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 12} Williams also asserts the city is liable under R.C. 2744.02(B)(3), which excuses liability for a political subdivision for "injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads."

{¶ 13} The Supreme Court of Ohio has set out a three-tiered analysis to determine a political subdivision's immunity from tort liability when it is undisputed that the defendant is a political subdivision. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551 (2000). The first tier is the general proposition that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id.* at 556-57. The immunity is not absolute, and the second tier mandates that the court determine whether any of the five exceptions to immunity set out in R.C. 2744.02(B) apply. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). A court may also address whether any specific defenses to liability listed in R.C. 2744.02(B)(1)(a) through (c) apply. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 8. If any of the exceptions apply and no defense in R.C. 2744.02(B) applies, a court moves to the third tier and must then determine if any of the defenses in R.C. 2744.03 apply to provide the political subdivision a defense against liability. *Id.* at ¶ 9.

{¶ 14} Using this three-tier analysis, "the court reaches the end of its inquiry when the acts or omissions of a political subdivision do not fit under any of the five exceptions enumerated in R.C. 2744.02(B)" and does not engage in the third tier if no exception applies. *Nelson v. Cleveland*, 8th Dist. No. 98548, 2013-Ohio-493, ¶ 14. If no exception is applicable, the political subdivision retains civil liability. *Yonkings v. Piwinski*, 10th Dist. No. 11AP-07, 2011-Ohio-6232.

{¶ 15} The parties do not dispute the city is a political subdivision generally entitled to civil immunity. Williams, however, asserts that exceptions make the city liable for his injuries, while the city argues the exceptions do not apply.

{¶ 16} Williams argues that he is entitled to an R.C. 2744.02(B)(2) exception because the maintenance and upkeep of the municipal sewer system is a proprietary function, and the catch basin that collapsed is a component of the sewer system. Williams asserts the city was negligent in failing to maintain the catch basin and, as a result, it was in an impermissible state of disrepair and collapsed when he rode his bicycle over it.

{¶ 17} R.C. 2744.01(G)(2)(d) lists specific functions expressly designated as proprietary functions, including "[t]he maintenance, destruction, operation, and upkeep of a sewer system." A city can be held liable for the negligent maintenance of sewer systems. *Scott v. Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677 (10th Dist.).

{¶ 18} Williams also argues that he is entitled to an R.C. 2744.02(B)(3) exception because the City negligently failed to maintain the roadway where the incident occurred and keep it free from nuisance. Williams asserts the collapsed catch basin created a hazardous condition and the city's failure to exercise reasonable care in maintaining the catch basin resulted in his injuries and damages.

{¶ 19} Before either provision breaches the city's immunity, Williams must establish the existence of a duty, breach of that duty, proximate cause, and damages, and that the negligence arose out of a " 'proprietary function.' " *Williams v. Glouster*, 4th Dist. No. 10CA58, 2012-Ohio-1283, ¶ 17, quoting R.C. 2744.01(G)(2)(d). If negligence is not proven, the city is not liable.

{¶ 20} Liability for damages against the city cannot arise as a matter of law except on proof that the city created a faulty or defective condition, or it had actual or constructive notice of the hazardous condition. *Cleveland v. Amato*, 123 Ohio St. 575 (1931); *Wilke v. Brook Park*, 8th Dist. No. 74636 (Dec. 16, 1999).

{¶ 21} For summary judgment purposes, unless Williams can demonstrate the city either created the hazard or was aware of the collapsing catch basin, a critical element of his negligence claim fails. " '[W]here negligence revolves around the question of the existence of a hazard or defect, the legal principal prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care.' " *Vasquez-Cromer v. Toledo*, 6th Dist. No. L-18-1266, 2019-Ohio-5149, ¶ 17, quoting *Heckert v. Patrick*, 15 Ohio St.3d 402, 405 (1984).

{¶ 22} Williams simply cannot identify the cause of the collapse, and therefore cannot make any reasonable assertions that the city created the hazard. He was asked about causation during his deposition, and testified:

> Q. Okay. When you fell -- could you tell what caused the condition in the road? Can you tell me what caused the road to collapse?
>
> A. No.

(Williams Depo. at 39.) Williams then argues that the resurfacing projects somewhere around the incident site must be the source of the collapse, but the argument is predicated on an unstable foundation that is not capable of supporting Williams's summary judgment burden.

{¶ 23} The fact that roads were being resurfaced in the area causing increased truck traffic is only speculation regarding the cause of the collapse. Williams testified during his deposition to the following:

> Q. At this time, do you have any beliefs about what caused the road to collapse?
>
> A. Yes.
>
> Q. And what would that be?
>
> A. I believe due to the roads being repaired around that area, like close to it. I had -- but it, like -- I had seen a lot of trucks, big heavy trucks hauling in heavy equipment and different things like that.
>
> Q. So are you just basing this on, you know, your own speculation or what are you basing this belief on?
>
> A. My own speculation.

(Williams Depo. at 39.) Mere speculation is insufficient to assign liability to the city in this matter. Speculation and conjecture will not overcome Williams' burden of offering specific facts showing there is a genuine issue for trial. *Dresher.* "It is well-established that when only speculation and conjecture is presented to establish proximate causation, the negligence claim has failed as a matter of law." *Harris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-466, 2013-Ohio-5714, ¶ 15.

**{¶ 24}** Similarly, the statements of city employees were only responses to hypothetical situations not to the actual accident, and such speculation cannot rise to the level of knowledge—actual or constructive. When responding to a summary judgment motion, " 'the nonmoving party must do more than supply evidence of a possible inference that a material issue of fact exists; it must produce evidence of specific facts which establish the existence of an issue of material fact.' " *Mercer v. Wal-Mart Stores, Inc.*, 10th Dist. No. 13AP-447, 2013-Ohio-5607, ¶ 20, quoting *Carrier v. Weisheimer Cos., Inc.*, 10th Dist. No. 95APE04-488 (Feb. 22, 1996); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (1991). Williams offered no evidence to substantiate his theory that the city created the hazard.

**{¶ 25}** To charge a political subdivision with constructive notice of a nuisance or hazard, " 'it must appear that such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights.' " *Tyler v. Cleveland*, 129 Ohio App.3d 441, 445 (8th Dist.1998), quoting *Beebe v. Toledo*, 168 Ohio St. 203 (1958).

**{¶ 26}** Williams notes that the city received many calls about the condition of the streets in the general area. However, there was no indication that anyone had reported the catch basin at the northeast corner of the intersection of Ellery Drive and Shady Lane Road. Williams testified no work was being done on the catch basin or the road around it.

**{¶ 27}** Williams had a clear unobstructed view of the roadway and he did not notice any hazards. If he was not aware of a hazardous condition as he travelled over the site, it is unlikely anyone else had knowledge of the hazard.

**{¶ 28}** Williams does not know how long the conditions had existed, and testified:

> Q. Okay. Do you know if the condition was there before your
> accident occurred?

A. No.

(Williams Depo. at 38.) There is no evidence of any deterioration of the catch basin between the last inspection in 2017 and the date of the accident. Williams is unable to prove how long the condition had existed prior to his accident, which is fatal to a showing of constructive notice. Williams is not required to establish the exact time the hazard is created, but "show the nuisance continued for a period of time sufficient to charge the defendant with constructive notice thereof." *Kokinos v. Ohio Greyhound, Inc.*, 153 Ohio St. 435, 438 (1950). " 'Mere speculation does not create a material issue of fact.' " *Sharp v. Andersons, Inc.*, 10th Dist. No. 06AP-81, 2006-Ohio-4075, ¶ 18, quoting *Wike v. Giant Eagle, Inc.*, 11th Dist. No. 2002-P-0049, 2003-Ohio-4034, ¶ 32.

{¶ 29} Williams fails to offer any evidence that the city created a hazardous condition that caused the catch basin to collapse. Williams also fails to prove that the city had constructive notice of the condition of the catch basin. There is nothing on the record to indicate the city had any knowledge of the catch basin, or that any city employees had observed the hazardous condition.

## V. Conclusion

{¶ 30} When we construe the evidence in a light most advantageous to Williams, we find no genuine issues of material fact regarding if the city created the hazard or had notice of the hazard. As such, Williams fails to establish negligence and therefore cannot take advantage of any exception to the civil immunity enjoyed by the city.

{¶ 31} Accordingly, Williams sole assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

_____